[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. DeGraff v. Ottawa Cty. Bd. of Elections*, Slip Opinion No. 2026-Ohio-649.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-649

THE STATE EX REL. DEGRAFF *v.* OTTAWA COUNTY BOARD OF ELECTIONS.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. DeGraff v. Ottawa Cty. Bd. of Elections*, Slip Opinion No. 2026-Ohio-649.]

*Prohibition—Writ sought to compel board of elections to remove referendum on zoning amendment from May 2026 primary-election ballot—Board of elections did not abuse its discretion or clearly disregard applicable law by denying protest to zoning-referendum petition, because petition included an appropriate map when filed with township board of trustees and board of elections could reasonably conclude that petition's brief summary of zoning amendment's contents accurately described where one of the affected properties is located—Writ denied.*

(No. 2026-0048—Submitted February 18, 2026—Decided February 25, 2026.)

IN PROHIBITION.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and FISCHER,

DEWINE, BRUNNER, DETERS, HAWKINS, and SHANAHAN, JJ.

**Per Curiam.**

{¶ 1} Relator, Robin DeGraff, owns property that her township board of trustees voted to rezone. Electors in the township seeking to prevent the rezoning circulated a referendum petition, and respondent, the Ottawa County Board of Elections, placed the referendum on the May 5, 2026 primary-election ballot. DeGraff filed a protest with the board of elections against the petition, which the board denied. DeGraff now seeks a writ of prohibition ordering the board of elections to remove the referendum from the ballot. She asserts that the petition was not accompanied by an appropriate map as required by R.C. 519.12(H) and that the petition's brief summary of the zoning amendment's contents was misleading.

{¶ 2} The board of elections did not act in clear disregard of applicable law or abuse its discretion in denying DeGraff's protest. Therefore, we deny the writ.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 3} R.C. 519.12 sets forth the process for obtaining approval of certain township zoning amendments and for preventing those amendments by way of a referendum. If a township board of trustees votes to adopt a zoning amendment, the amendment takes effect 30 days after its adoption, unless a referendum petition is submitted to the township before the 30 days has elapsed. R.C. 519.12(H). The referendum petition must contain a statutorily prescribed number of signatures from registered voters in the area affected by the zoning amendment who voted in the last gubernatorial election. *Id.* Each part-petition must contain a brief summary of the zoning amendment's contents. *Id.* In addition, the petition must be "accompanied by an appropriate map of the area affected by the zoning proposal." *Id.* If these statutory criteria are satisfied, the board of township trustees then certifies the petition to the board of elections. *Id.* The board of elections reviews

the petition, and if it determines that the petition is "sufficient and valid," it places the referendum on the next general- or primary-election ballot in an election occurring at least 90 days after the petition was submitted to the board of township trustees. *Id.*

{¶ 4} Catawba Island Township is a township in Ottawa County. DeGraff owns two parcels of property in Catawba Island Township that the parties identify as "Parcel 1" and "Parcel 2." The properties are currently zoned class "A," which identifies them as being located in a low-density residential district. In July 2025, DeGraff submitted to the township board of trustees an application to rezone the properties to class "R-1," which would identify them as being located in a medium-density residential district. On August 26, the township board of trustees approved the proposed zoning amendment.

{¶ 5} On September 15, petition circulators in the township submitted to the township board of trustees a referendum petition on the zoning amendment. The petition was accompanied by three different maps. On November 3, DeGraff filed a notice of protest with the board of elections with respect to the referendum petition. She argued, among other things, that the petition did not comply with R.C. 519.12(H), because it was not accompanied by an appropriate map. But, as discussed below, she did not argue in her written protest that the brief summary of the zoning amendment's contents was illegible or that it contained an incorrect address for one of the affected properties. On December 12, the board of elections held an evidentiary hearing on the protest and ultimately denied it.

{¶ 6} On January 14, 2026, DeGraff filed this prohibition action, and the next day, she filed an amended complaint. She seeks a writ of prohibition preventing the board of elections from placing the referendum on the May 5, 2026 primary-election ballot. She asserts here that the petition was not accompanied by an appropriate map and that the petition's brief summary of the zoning

amendment's contents was both illegible and contained an incorrect address for one of the affected properties.

{¶ 7} The board of elections filed an answer to the amended complaint, and we issued an alternative writ, setting an expedited briefing schedule, 2026-Ohio-192.

## II. LEGAL ANALYSIS

### A. Prohibition and election standards

{¶ 8} To state a claim for relief in prohibition, DeGraff must allege (1) that the board of elections has exercised or is going to exercise quasi-judicial power, (2) that the exercise of that power is unauthorized by law, and (3) that denying the writ would result in injury for which no adequate remedy exists in the ordinary course of the law. *See State ex rel. Moscow v. Clermont Cty. Bd. of Elections*, 2022-Ohio-3138, ¶ 13; *State ex rel. McCord v. Delaware Cty. Bd. of Elections*, 2005-Ohio-4758, ¶ 27. "A board of elections exercises quasi-judicial authority when it decides a protest after a mandatory hearing that includes sworn testimony." *Moscow* at ¶ 15. Here, the board of elections held the required hearing on DeGraff's protest, *see* R.C. 3501.39(A), at which it took testimony. And given the proximity of the May 2026 primary election, DeGraff lacks an adequate remedy in the ordinary course of the law. *See Moscow* at ¶ 15. Thus, the first and third criteria for establishing entitlement to a writ of prohibition are satisfied.

{¶ 9} The remaining question is whether the board of elections acted unlawfully in denying DeGraff's protest. A board of elections' "exercise of judicial or quasi-judicial power is unauthorized if it engaged in fraud, corruption, abuse of discretion, or clear disregard of statutes or applicable legal provisions." *State ex rel. Youngstown v. Mahoning Cty. Bd. of Elections*, 1995-Ohio-184, ¶ 14. An abuse of discretion is evinced by an unreasonable, arbitrary, or unconscionable attitude. *State ex rel. Miller v. Cuyahoga Cty. Bd. of Elections*, 2004-Ohio-5532, ¶ 16.

DeGraff does not allege fraud or corruption here. She asserts only that the board of elections abused its discretion or acted in clear disregard of applicable law.

{¶ 10} In support of that assertion, DeGraff makes two claims: that the referendum petition was not accompanied by an appropriate map as required by R.C. 519.12(H) and that the petition's brief summary of the zoning amendment's contents was misleading.

### B. The maps

{¶ 11} A referendum petition filed with a board of township trustees "shall be accompanied by an appropriate map of the area affected by the zoning proposal." R.C. 519.12(H). The map need not actually be included with the part-petitions when they are circulated for signatures; rather, it must be filed with the board of trustees at the same time as the petition. *See State ex rel. Columbia Reserve, Ltd. v. Lorain Cty. Bd. of Elections*, 2006-Ohio-5019, ¶ 31-33. "A map accompanying a referendum petition should be considered appropriate or suitable for purposes of R.C. 519.12(H) if it does not mislead the average person about the area affected by the zoning resolution." *McCord* at ¶ 63.

{¶ 12} In this case, the petition circulators submitted three maps to the board of trustees when they submitted the petition. They did not show these maps to the petition signers when collecting signatures.

{¶ 13} The board of elections does not dispute that the first two maps—identified by the parties as "Map 1" and "Map 2"—do not show the area affected by the zoning amendment. Map 1 is a copy of the map from the Ottawa County Auditor's website on which certain properties are outlined in yellow and blue. Several of the outlined properties are not subject to the zoning amendment; rather, they are other properties owned by DeGraff. The map does not contain a key stating which, if any, of the outlined properties are subject to the zoning amendment. Map 2 is a copy of Catawba Island Township's land-use plan. It does not identify the properties that are subject to the zoning amendment.

5

**{¶ 14}** However, the board of elections found, and it argues here, that the third map submitted with the petition—identified by the parties as "Map 3"—accurately shows the area affected by the zoning amendment. DeGraff disagrees.

**{¶ 15}** Map 3 shows a selected portion of the official Catawba Island Township zoning map, which depicts various parcels of property. DeGraff submitted a copy of Map 3 with her zoning application to the township board of trustees. On the map, Parcels 1 and 2 contain diagonal markings, which the parties call "cross-hatching." No other parcels on Map 3 contain cross-hatching, although some of the other parcels contain other markings. Parcels 1 and 2 list the names of their prior owners, not DeGraff. Parcels 1 and 2 also contain the handwritten notation "'A' – 'R-1,'" and at the bottom of the map, the following is handwritten:

> APPLICATION # 737720
> ROBIN L. DEGRAFF
> "A" to "R-1"

(Capitalization in original.)

**{¶ 16}** In addition to the information above, Map 3 contains additional information not pertinent to the issue here. But it accurately shows the area affected by the zoning amendment. Moreover, if a map "has been approved by the board of [township] trustees as accurately depicting [the area affected by] the zoning amendment[]," we will not penalize zoning-referendum petitioners for using that map. *State ex rel. Gemienhardt v. Delaware Cty. Bd. of Elections*, 2006-Ohio-1666, ¶ 56. "[T]ownship electors seeking to exercise their right of referendum need not attach a map that is more accurate than the map approved by the board of trustees." *Id.*

**{¶ 17}** Here, the final township zoning resolution has not been submitted as evidence, so it is unclear whether the board of township trustees approved Map 3.

But DeGraff included Map 3 with her zoning application, the township zoning commission reviewed and approved the application, and the township board of trustees adopted the zoning commission's recommendation. Given these facts, the board of elections did not abuse its discretion in determining that Map 3 was appropriate and would not mislead the average person about the area affected by the zoning amendment. *See McCord*, 2005-Ohio-4758, at ¶ 63.

{¶ 18} However, DeGraff also argues that even if Map 3 by itself is an appropriate map of the area affected by the zoning amendment, the three maps that the referendum petitioners submitted to the township board of trustees with their petition must be evaluated collectively. DeGraff argues that because the other two maps—and particularly Map 1—do not accurately identify the area to be rezoned, the board of elections erred in concluding that the petition was accompanied by an appropriate map.

{¶ 19} R.C. 519.12(H) requires that the zoning-referendum petition submitted to the township board of trustees be accompanied by "an" appropriate map. We recently analyzed this requirement in the context of petition circulators who submitted to a board of township trustees a zoning-referendum petition accompanied by two maps. *See State ex rel. M/I Homes Cincinnati, L.L.C. v. Clermont Cty. Bd. of Elections*, 2025-Ohio-4362, ¶ 31-39. In *M/I Homes*, we denied the relator's request for a writ of prohibition. *Id.* at ¶ 39. However, we determined that neither of the maps submitted with the referendum petition in that case was misleading, *see id.* at ¶ 34-36, leaving open the question of the legal impact on a zoning-referendum petition if it is determined that one map submitted with the petition is misleading even if one or more other maps also submitted with the petition are not.

{¶ 20} As we noted in *M/I Homes*, however, "[t]he relevant clause of R.C. 519.12(H) is written in the singular, not the plural, and it requires the filing of '*an* appropriate map.'" (Emphasis added in *M/I Homes*.) *M/I Homes* at ¶ 34. Thus, a

petition circulator complies with R.C. 519.12(H) so long as he or she files with the referendum petition an appropriate map, even if that map is accompanied by other maps that do not identify the area affected by the zoning amendment. Here, the petition circulators did comply with R.C. 519.12(H)—they filed *an* appropriate map. And nothing in the applicable statutory provision prohibited them from filing other maps. *See M/I Homes* at ¶ 34.

{¶ 21} DeGraff argues that if a petition circulator is permitted to file misleading maps along with an appropriate map, the average voter would have to guess which map, or portions of maps, is accurate. DeGraff's concerns about voter confusion in this case are overstated. The petition circulators are not required to show the petition signers the maps, and here they did not do so. *See Columbia Reserve*, 2006-Ohio-5019, at ¶ 31-33. Nor do the map or maps appear on the referendum ballot. *See* R.C. 3505.06(E) (discussing ballot text). But regardless of whether the voters will see the maps, we are guided by the statutory language.

{¶ 22} Because the petition circulators submitted an appropriate map to the township board of trustees, the board of elections did not abuse its discretion or clearly disregard applicable law in denying DeGraff's protest regarding the maps.

*C. The brief summary of the zoning amendment's contents*

{¶ 23} R.C. 519.12(H) requires that each part-petition contain "a brief summary" of the contents of the zoning amendment. The summary must be "accurate and unambiguous." *E. Ohio Gas Co. v. Wood Cty. Bd. of Elections*, 1998-Ohio-285, ¶ 11. "'If the summary is misleading, inaccurate, or contains material omissions which would confuse the average person, the petition is invalid and may not form the basis for submission to a vote.'" *Id.*, quoting *Shelly & Sands v. Franklin Cty. Bd. of Elections*, 12 Ohio St.3d 140, 141 (1984). DeGraff argues that the brief summary in the zoning-referendum petition at issue here was misleading or inaccurate for two reasons: (1) portions of it were illegible and (2) it contained an incorrect address for Parcel 2.

8

### i. DeGraff's written-protest notice

{¶ 24} We note that DeGraff did not raise the legibility of the brief summary of the zoning amendment's contents or the incorrect address given for Parcel 2 in her written-protest notice to the board of elections. Therefore, we do not reach these issues.

{¶ 25} A person protesting a zoning-referendum petition must file a written protest with the board of elections. R.C. 3501.39(A)(1) and (2). The written protest must "nam[e] specific objections" against the petition. *Id.* It is well established that in a writ action arising from a protest before a board of elections, this court need not consider issues that the protester did not raise in her written protest. *See State ex rel. Miller Diversified Holdings, L.L.C. v. Wood Cty. Bd. of Elections*, 2009-Ohio-4980, ¶ 20; *see also State ex rel. Phillips v. Lorain Cty. Bd. of Elections*, 2001-Ohio-1627, ¶ 18; *State ex rel. Cooker Restaurant Corp. v. Montgomery Cty. Bd. of Elections*, 1997-Ohio-315, ¶ 24 ("because the alleged substantive petition defects now raised by [the protester] . . . were not specified in her protest, we need not consider [those] issues"). One purpose of the specific-objections requirement is to give the petitioner notice of the protester's objections to the referendum petition and the opportunity to present evidence to rebut those objections. *Miller* at ¶ 19; *Cooker* at ¶ 23.

{¶ 26} Nowhere in her written protest did DeGraff argue that the petition's brief summary of the zoning amendment's contents is illegible. Nor did she argue that the brief summary contains an incorrect address for Parcel 2. DeGraff also submitted an affidavit with her protest notice; in it, she does not mention concerns about the legibility of the brief summary or the address given for Parcel 2.

{¶ 27} DeGraff testified, without objection, at the protest hearing regarding the legibility of the brief summary and the address given for Parcel 2, and her counsel at that hearing addressed these alleged failures of the petition in his closing argument. But DeGraff's testimony was quite limited. And the board of elections'

oral motion at the hearing summarizing its reasons for denying the protest did not mention the legibility of the brief summary of the zoning amendment's contents or the address given for Parcel 2 in the petition. Rather, the board of elections simply stated that "the brief summary description . . . is legally sufficient."

{¶ 28} The board of elections does not argue that DeGraff failed to raise these issues in her written protest. But it is difficult for us to evaluate whether a board of elections abused its discretion in deciding an issue when that issue was not even clearly considered by the board. Like the protestors in *Miller*, DeGraff "cannot establish that the board of elections abused its discretion or clearly disregarded applicable law based on claims [she] failed to specifically raise in [her] written protest before the board," 2009-Ohio-4980 at ¶ 20.

{¶ 29} But even assuming DeGraff's arguments are properly before us, they lack merit.

### ii. Legibility

{¶ 30} DeGraff argues that the board of elections should have invalidated the zoning-referendum petition because portions of the brief summary were written in such small font as to be illegible to the average reader. We disagree.

{¶ 31} In the petition, the brief summary of the zoning amendment's contents contains two parts: The first part contains the petition circulators' explanation of the zoning amendment's contents. Directly below that, the petition circulators placed what they termed "legal description[s]" of the affected parcels, which appear to be direct copies of descriptions taken from surveyor reports. These legal descriptions are written in smaller font than the zoning-amendment explanation. And the legal description of Parcel 1 is in an even smaller font than the legal description of Parcel 2.

{¶ 32} DeGraff offered little testimony at the protest hearing regarding the legibility of the brief summary. DeGraff herself testified that she had difficulty reading the legal descriptions of the parcels, but even she was able to read them.

DeGraff does not point to any testimony from the hearing in which a witness stated that parts of the brief summary were illegible.

{¶ 33} R.C. 512.19(H) does not require that a zoning-referendum petition be printed in any specific font size. Such petitions are also subject to the requirements set forth in R.C. 3501.38. *See* R.C. 512.19(H). But R.C. 3501.38 also does not contain any font-size requirement for the brief summary in a zoning-referendum petition. In contrast, the legislature has included specific font-size requirements for other types of petitions, showing that it knows how to impose such a requirement if it so wishes. *See* R.C. 3519.05 (language in initiative petitions to propose a constitutional amendment must meet certain font-size requirements).

{¶ 34} Although zoning-referendum petitions are not subject to specific font-size requirements, a petition's brief summary of the zoning amendment's contents must be legible. If it is illegible, the summary would be misleading. DeGraff has not provided us with any precedent or other authority regarding how a board of elections or this court should determine if the brief summary in a zoning-referendum petition is legible. In a similar case involving whether the *maps* accompanying a zoning-referendum petition were impermissibly faded or blurry, we reviewed the maps at issue and concluded that "they [did] not support [the] relators' contention that the maps were so faded and blurry as to be misleading to potential signers about the area covered by the zoning amendment." *State ex rel. T-Bill Dev. Co., L.L.C. v. Union Cty. Bd. of Elections*, 2021-Ohio-3535, ¶ 23.

{¶ 35} In this case, the font of the legal description of Parcel 1 is small and may have been hard for some petition signers to read. But the question before us is whether the board of elections abused its discretion or clearly disregarded applicable law by refusing to invalidate the petition. R.C. 519.12(H) does not require that the brief summary of the zoning amendment's contents be written in a minimum font size, and no witness at the protest hearing testified that the legal descriptions provided in the petition were illegible. We thus conclude that the

board of elections did not abuse its discretion in refusing to invalidate the petition based on the font size of the brief summary.

### iii. The address of one of the affected properties

{¶ 36} DeGraff also argues that the petition's brief summary of the zoning amendment's contents is inaccurate because it states that one of the affected properties, Parcel 2, is located at "0 NE Catawba Road." She argues that the brief summary should not have included a numerical street address and should have stated that Parcel 2 is located on "NE Catawba Road." She contends that the board of elections should have invalidated the petition for this reason. We disagree.

{¶ 37} The petition's brief summary states, in part, that it concerns a request by DeGraff "to rezone . . . parcel #013445619461000 located at 0 NE Catawba Road, Port Clinton, OH." It also states that the parcel is "located in Section 3 Lot 11 of Catawba Island Township." The parties, however, have stipulated in a jointly filed statement of agreed facts that the "street address of '0 NE Catawba Road'" does not exist and that the zoning amendment itself "described Parcel 2's street address as 'NE Catawba Road.'"

{¶ 38} Little evidence was submitted at the protest hearing regarding this issue. DeGraff testified that Parcel 2, which is mostly vacant property, does not have a numerical street address. One of the petition circulators testified that she looks at land-transfer information to see which land is being bought and sold and that that information often identifies vacant parcels with a "0" before the street address.

{¶ 39} As evidence in this writ action, the parties submitted affidavits that they did not submit at the protest hearing. The board of elections submitted an affidavit from Todd Bickley, who was the zoning inspector for Catawba Island Township when DeGraff filed her zoning-amendment application. Bickley avers as follows: "[O]ne of the common ways for the Ottawa County Auditor's Office to identify a property with no physical address is to designate the street address of that

12

property as '0.' Specifically, designating the DeGraff property as '0 NE Catawba Road' is normal." DeGraff submitted an affidavit from Scott A. Johnson, who represented her at the protest hearing. Johnson avers that he searched the online records of the Ottawa County Auditor's Office and that Parcel 2 appears in the records as "NE Catawba Road," not as "0 NE Catawba Road." He also avers that a search of those records returns three properties identified as being located at "0 NE Catawba Road," none of which is Parcel 2.

{¶ 40} As stated above, the brief summary of the zoning amendment's contents on a zoning-referendum petition must be "accurate and unambiguous." *E. Ohio Gas*, 1998-Ohio-285, ¶ 11. The parties agree that the address "0 NE Catawba Road" does not exist. But the board of elections and the petition circulators presented evidence that vacant parcels in Ottawa County are commonly identified, including by governmental officials, with a "0" preceding the street name. Given this and the lack of evidence DeGraff submitted at the protest hearing regarding the address of Parcel 2, we conclude that the board of elections did not abuse its discretion or clearly disregard applicable law by denying a challenge to the affected property's address. Rather, the board could reasonably conclude that the petition's statement that Parcel 2 "is located at 0 NE Catawba Road, Port Clinton, OH" accurately describes where the property is located.

{¶ 41} Finally, DeGraff briefly argues that the alleged misleading nature of the brief summary of the zoning amendment's contents was heightened because the petition signers were not shown a map when they were presented with the petition. As stated above, we have already held that a map need not be included with a petition when the petition is signed. *See Columbia Reserve*, 2006-Ohio-5019, at ¶ 31-33.

### III. CONCLUSION

{¶ 42} For the foregoing reasons, the Ottawa County Board of Elections did not clearly disregard applicable law or abuse its discretion in denying DeGraff's

written protest to the zoning-referendum petition. Therefore, DeGraff is not entitled to a writ of prohibition.

Writ denied.

————————————

Eastman & Smith, Ltd., Mark W. Sandretto, and Nicholas W. Bartlett, for relator.

James VanEerten, Ottawa County Prosecuting Attorney, for respondent.

————————————

14